NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 61

No. 2015-201

| State of Vermont | Supreme Court |
| --- | --- |
| | |
| | On Appeal from |
| v. | Superior Court, Washington Unit, |
| | Civil Division |
| | |
| Atlantic Richfield Company, et al. | December Term, 2015 |

Mary Miles Teachout, J.

William H. Sorrell, Attorney General, Scot L. Kline, Gavin J. Boyles, and Robert F. McDougall, Assistant Attorneys General, Montpelier, Matthew F. Pawa, Benjamin A. Krass and Wesley Kelman of Pawa Law Group, P.C., Newton Centre, Massachusetts, Robert J. Gordon, Robin Greenwald and William A. Walsh of Weitz & Luxenberg, P.C., New York, New York, and Scott Summy, Celeste Evangelisti and Carla Burke of Baron & Budd, P.C., Dallas, Texas, for Plaintiff-Appellant.

Ritchie E. Berger of Dinse, Knapp & McAndrew, P.C., Burlington, David J. Lender and Theodore E. Tsekerides of Weil, Gotshal & Manges LLP, New York, New York, and Deborah E. Barnard and Michael T. Maroney of Holland & Knight LLP, Boston, Massachusetts, for Defendants-Appellees Exxon Mobil Corporation, ExxonMobil Oil Corporation and Mobil Corporation.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1. **ROBINSON, J.** This interlocutory appeal calls upon us to decide whether 12 V.S.A. § 462 creates an exemption from the general six-year limitation for the State of Vermont's claims against a host of defendants for generalized injury to state waters as a whole due to groundwater contamination from gasoline additives. On the basis of the statute of limitations, the trial court dismissed the State's claims insofar as they are predicated on

generalized injury to state waters as a whole. On appeal, the State argues that § 462 exempts the State's claims from the statute of limitations, and, alternatively, that the State's claims arising under 10 V.S.A. § 1390, a statute that establishes a state policy that the groundwater resources of the state are held in trust for the public, are not time barred because that statute became effective less than six years before the State filed its complaint. We affirm.

¶ 2. For purposes of a motion to dismiss, we assume all factual allegations in the complaint are true. Amiot v. Ames, 166 Vt. 288, 291, 693 A.2d 675, 677 (1997). Those allegations include the following.

¶ 3. Methyl tertiary butyl ether (MTBE) is a synthetic chemical that some refiners have blended into gasoline at times since 1979. Tert-butyl alcohol (TBA) is a degradation product of MTBE and for purposes of the complaint is included within the scope of "MTBE." Studies link MTBE to a variety of adverse health effects, and it is a known animal carcinogen and possible human carcinogen. The chemical can render water undrinkable even in low concentrations.

¶ 4. MTBE contaminates the environment through releases, leaks, overfills, and spills from gasoline delivery facilities, as well as through releases associated with certain consumer activities such as using snowmobiles, motorized watercraft, or lawnmowers; operating junkyards; conducting vehicle maintenance; and operating repair facilities. Once released into the environment, MTBE migrates farther and faster through soil and groundwater, penetrates deeply into aquifers, resists biodegradation, and results in persistent contamination that is very costly to address.

¶ 5. Defendants are petroleum industry corporations including manufacturers, promoters, refiners, and marketers of MTBE and/or gasoline containing MTBE.[1] In the 1970s,

---

[1] For purposes of this appeal, "defendants" includes the following: Atlantic Richfield Company; BP Products North America, Inc.; Chevron U.S.A. Inc.; CITGO Petroleum

oil companies began blending MTBE, which was a waste product of the refining process, into gasoline. The chemical was initially used as an octane enhancer.

¶ 6.    In 1990, after tremendous lobbying efforts by the petroleum industry, Congress mandated the use of reformulated gasoline (RFG) containing at least 2% oxygen by weight in areas with the worst ozone or smog problems.  In 1992, the Environmental Protection Agency (EPA) created the Oxygenated Fuel Program, which required at least 2.7% oxygen by weight in gasoline in certain metropolitan areas to reduce carbon monoxide emissions during the fall and winter months.  While the RFG program required the use of an oxygenate, it did not require that the oxygenate be MTBE.

¶ 7.    The oil industry chose MTBE as the "oxygenate of choice" because it was the most inexpensive oxygenate to produce and offered defendants the highest profit margin of available oxygenates.  As a result, MTBE production increased from 1.5 million barrels in 1980 to 75 million barrels in 1998.  Much of the gasoline sold in areas under the RFG program exceeded the 2% or 2.7% oxygenate requirements, and MTBE  composed up to 15% of every gallon of gasoline used in those areas.

¶ 8.    Throughout this period, defendants were aware that on a nationwide level, gasoline was leaking from multiple sources, including underground storage tanks and the systems used for shipping, storing, pumping, and using gasoline throughout the distribution chain.  Defendants were or should have been aware that thousands of gallons of gasoline entered the soil annually due to underground storage tank release and leaks, overfills, mishandling, and vaporization from underground storage tanks.  Defendants knew or should have known that

_____

Corporation; CITGO Refining and Chemicals, Company, L.P.; Coastal Eagle Point Oil Company; El Paso Merchant Energy-Petroleum Company; Equilon Enterprises LLC; Exxon Mobil Corporation; ExxonMobil Oil Corporation; Hess Corporation; Highlands Fuel Delivery, LLC; Irving Oil Limited; Motiva Enterprises LLC; Mobil Corporation; PDV Midwest Refining, L.L.C.; Shell Oil Company; Shell Oil Products Company, LLC; Shell Petroleum Inc.; Shell Trading (US) Company; Sunoco, Inc. (R&M); Ultramar Energy, Inc.; Valero Energy Corporation; Valero Marketing and Supply, Company; and Valero Refining-Texas, L.P.

releases associated with certain consumer activities such as operating motorized watercraft, snowmobiles, and lawnmowers would result in release of MTBE into the waters of the state. And, defendants were or should have been aware that MTBE contamination of groundwater was inevitable given MTBE's water-seeking properties, recalcitrance to biodegradation and bioremediation, and the long and ongoing history of releases of MTBE-containing gasoline into the environment.

¶ 9.    Defendants did not perform toxicological tests before introducing MTBE into the stream of commerce, and instead attempted to convince the EPA that health testing was not needed.  Despite their superior knowledge of the groundwater threat MTBE posed, certain defendants, beginning in the early 1980s, formed various task forces and committees for the purpose of concealing MTBE's actual threat, facilitating their MTBE use, and convincing the public and regulators that increasing concentrations of MTBE in gasoline was desirable.  Certain defendants manufactured and distributed MTBE with actual knowledge that MTBE would cause harm in groundwater and production wells, and took affirmative steps to conceal these effects. At all times, defendants knew there were other more environmentally sound alternatives.

¶ 10.    As a result of this concealment and widespread use, MTBE has contaminated wide swaths of groundwater across the United States, including Vermont.  A September 1999 report by a special EPA Blue Ribbon Panel stated that MTBE is a "threat to the nation's drinking water resources," "has caused widespread and serious contamination," and is found in 21% of ambient groundwater tested in areas where MTBE is used.

¶ 11.    MTBE has contaminated public drinking water supplies in Vermont, threatening Vermonters' health, safety, and welfare.  Despite Vermont's MTBE ban,[2] contamination continues to be found in new locations in Vermont.  Over the past six years, testing and

_____

[2]  In 2005, the Legislature enacted a law prohibiting the sale and storage of gasoline containing MTBE in Vermont.  See 2005, No. 26.

4

monitoring has revealed for the first time MTBE contamination in groundwater that was not reasonably discoverable prior to then. In some instances, the State has traced these detections to newly discovered leaks or other faults; in other cases MTBE's presence in the groundwater and/or soil was unknown and not reasonably discoverable until soil testing was prompted by some event; in other instances only the appearance of a petroleum odor in a well enabled the location of an underlying contaminant plume; and in some cases past releases only recently contaminated test and production wells.

¶ 12. To this day, MTBE plumes, which were released years ago, continue to migrate throughout the state, contaminating new locations and adversely impacting public and private drinking wells. Absent large-scale and expensive remediation, MTBE plumes will continue to migrate further contaminating new water sources and posing a public health risk.

¶ 13. On the basis of these allegations, the State sued defendants on June 5, 2014, advancing claims based on 10 V.S.A. §§ 1390 and 1410, public nuisance, private nuisance, trespass, negligence, strict liability for design defect and defective product, strict liability for failure to warn, and civil conspiracy. In its complaint, the State described various categories of contaminated sites, but did not expressly identify any specific contaminated sites. At least some of its claims were based on widespread and "indivisible" injury to Vermont's groundwaters as a whole, held in public trust by the state.

¶ 14. Defendants moved to dismiss the complaint as time-barred under the general six-year statute of limitations for civil actions. See 12 V.S.A. § 511. Defendants noted that the Legislature's ban on MTBE in Vermont was enacted in May 2005 and became effective January 1, 2007. 2005, No. 26, § 2, codified at 10 V.S.A. § 577(a). For this reason, defendants argued, the State was indisputably aware of the alleged injury to Vermont's waters due to MTBE more than six years prior to its June 5, 2014 complaint.

5

¶ 15. In opposition, the State argued that: (1) its claims, which arise from injury to state lands and public trust resources, are exempt from any limitations period, see 12 V.S.A. § 462; (2) even if a limitations period did apply, the State's cause of action based on 10 V.S.A. § 1390 accrued on June 9, 2008, when that statute became effective, and the State filed suit within six years of the Legislature's creation of that new cause of action; (3) each of its individual claims accrued when the State knew of the particular injury and its specific cause—factual issues that cannot be resolved on a motion to dismiss; and (4) because MTBE plumes continue to migrate and spread across the State, each new contamination creates a new cause of action under the continuing tort doctrine thus preventing the limitations period from running.

¶ 16. In January 2015, the superior court dismissed the State's claims insofar as the State alleged a generalized injury to the State's groundwater system as a whole. That the State was aware of the generalized injury more than six years before filing this action is undisputed.[3] The trial court concluded that 12 V.S.A. § 462, which provides that statutes of limitations shall not extend to "lands belonging to the state," did not bar application of the statute of limitations to the State's claims in this case. The court reasoned that § 462 precludes claims of adverse possession or similar prescriptive rights against the real property of the state, but does not extend to the State's claims for injury to groundwater held in public trust by the state. The trial court further rejected the State's argument that its claim pursuant to 10 V.S.A. § 1390 was not time-barred, concluding that § 1390 did not create a new cause of action effective June 2008. With respect to the State's continuing tort argument, as well as its allegations that it discovered some instances of contamination within the last six years, the trial court declined to dismiss the claims

---

[3] Because the May 2005 date of the Legislature's passage of a ban on gasoline containing MTBE was more than six years before the State's complaint, the earliest date the State knew or should have known of its generalized claims need not be determined in the context of this motion to dismiss.

and granted the State leave to amend its complaint to provide more specificity with respect to the sites in question rather than relying on a highly generalized claim.

¶ 17. The State then brought this interlocutory appeal of the trial court's dismissal of the State's claims based on generalized injury to the state's groundwaters. In particular, the trial court referred for interlocutory review questions concerning the applicability of 12 V.S.A. § 462 to exempt the State's claims from the statute of limitations and the impact of the Legislature's passage of 10 V.S.A. § 1390, effective June 9, 2008. See 2007 No. 199 (Adj. Sess.), § 8 (providing law becomes effective on passage). The State makes two arguments. First, the superior court erred when it held that § 462, which exempts from the statute of limitations "lands belonging to the state," does not apply to tort and environmental claims arising from groundwater contamination. Second, the superior court erred when it determined that 10 V.S.A. § 1390 did not create a new cause of action such that the six-year statute of limitations does not bar the State's claims.

¶ 18. Both of the State's arguments raise questions of statutory interpretation, and we review these questions of law anew, without deference to the trial court. Benson v. MVP Health Plan, Inc., 2009 VT 57, ¶ 4, 186 Vt. 97, 978 A.2d 33. We review each argument in turn.

I. 12 V.S.A. § 462

¶ 19. 12 V.S.A. § 462 provides: "Nothing contained in this chapter shall extend to lands given, granted, sequestered or appropriated to a public, pious or charitable use, or to lands belonging to the state." The section appears in chapter 23 of Title 12, which relates to statutes of limitations and includes the general six-year limitation for civil actions, 12 V.S.A. § 511.

¶ 20. The State's argument—that this section bars application of the general statute of limitations to its claims—rests on two assumptions, both of which defendants contest, and both of which are essential to the State's argument. First, the State argues that this statute relating to "lands belonging to the state" applies to groundwater held by the state in trust for the public.

7

Second, the State contends that the statute's bar to application of the statute of limitations extends beyond claims of adverse possession or prescriptive rights to claims based on environmental injuries.

¶ 21.    Based on the history surrounding its enactment, our cases, the language of the statute, and policy considerations, we conclude that § 462 does not exempt the State's claims from the statute of limitations because the State's claims are not the kind of claims contesting property interests in land to which the statute applies.[4]

¶ 22.    The origins of § 462 reinforces that the statute applies to claims asserting an interest in land.  See MacDonough-Webster Lodge No. 26 v. Wells, 2003 VT 70, ¶¶ 7-10, 175 Vt. 382, 834 A.2d 25.[5]   In MacDonough-Webster, this Court concluded that § 462 did not prevent an adjoining neighbor from invoking adverse possession to claim rights to land at the boundary of property owned by a Masonic lodge because the primary use of the property was for the Masons' private meetings and not for the public at large.  Id. ¶ 16.  In reaching that conclusion, we considered the history of § 462.  We noted that "[s]ection 462 dates back to the so-called quieting act of 1785," which was "passed to address the widespread problem of defective land titles held by early Vermont settlers."  Id. ¶ 7.  "The act set up a remedy whereby those with legal title had to pay for land improvements made by ejected settlers."  Id.  "[P]ersons settled on Lands granted or sequestered for public, pious, or charitable uses" and lands belonging to the state, were exempted from the rules for resolving conflicting land claims.  Id. ¶ 8 (quotation and citation omitted).  We noted in a parenthetical that:

> Section 462 . . . is Vermont's version of the generally accepted, common-law rule that a claim of title or right by adverse possession does not lie against public lands.  The principal policy

---

[4] Because we reject the State's arguments on this point, we need not address its argument that groundwater held by the state in trust for the public is among the "lands belonging to the state."

[5] MacDonough-Webster is a charitable-use case, but its analysis is applicable here.

8

> consideration behind this rule is that it would be injurious to the
> public to allow adverse possession claims of lands dedicated to
> public use.

Id. (quoting In re .88 Acres of Prop., 165 Vt. 17, 19-20, 676 A.2d 778, 780 (1996)). We explained that the goal of § 462 was "to protect against the loss of public lands due to the carelessness or oversight of the people charged with protecting the public's interests." Id. ¶ 10 (quoting Empire Dist. Elec. Co. v. Gaar, 26 S.W.3d 370, 376 (Mo. Ct. App. 2000)).

¶ 23.     We are not persuaded by the State's arguments that amendments to § 462 since its original enactment over two centuries ago have fundamentally altered its purpose or broadened its application beyond claims asserting an interest in lands. The Legislature's 1802 extension of § 462 to bar the application of all statutes of limitations to lands belonging to the state, as opposed to only the statute of limitation in the 1785 quieting act, does not signal that the Legislature intended to exempt the State from operation of statutes of limitation with respect to any and all State claims that are in some way related to land. And the Legislature's 1862 elimination of a second sentence authorizing actions for ejectment or other possessory actions in connection with such lands notwithstanding any statute of limitations does not by itself demonstrate a legislative intent to expand the class of cases covered by the exemption beyond those relating to interests in land.

¶ 24.     Although we have never squarely considered the question, our decisions have consistently reinforced the understanding that § 462 was designed to prevent adverse-possession claims with respect to interests in state property, or property dedicated to a public, pious, or charitable use. See Roy v. Woodstock Cmty. Trust, Inc., 2013 VT 100A, ¶ 39, 195 Vt. 427, 94 A.3d 530 (noting that purpose of § 462 is to "prevent[] an adverse possession claim [] when the land is dedicated to a public, pious or charitable use"); Mahoney v. Tara, LLC, 2011 VT 3, ¶ 11, 189 Vt. 557, 15 A.3d 122 (mem.) ("[T]he purpose of [§ 462 is to] 'ensure[] that adverse possession law does not infringe upon public benefit.' " (quoting MacDonough-Webster, 2003

9

VT 70, ¶ 11)); Benson v. Hodgdon, 2010 VT 11, ¶ 14, 187 Vt. 607, 992 A.2d 1053 (mem.) ("Public lands generally are statutorily exempted from adverse possession, even if such possession is open and notorious." (citing 12 V.S.A. § 462)); MacDonough-Webster, 2003 VT 70, ¶ 11 (comparing § 462 to 32 V.S.A. § 3802(4) and finding both statutes "encourage public uses by preventing the normal action of property law from interfering with property uses that benefit a wide spectrum of citizens"); Chittenden v. Waterbury Ctr. Cmty. Church, Inc., 168 Vt. 478, 483, 726 A.2d 20, 24 (1998) (noting § 462 "exempts from any limitation period all ownership claims relating to lands . . . belonging to the state" (quotation omitted)); Jarvis v. Gillespie, 155 Vt. 633, 643, 587 A.2d 981, 987 (1991) (noting § 462 protects municipalities from adverse-possession claims, provided property is "given to a public use"); Hazen v. Perkins, 92 Vt. 414, 420-21, 105 A. 249, 251 (1918) (holding that right to control flow of water from boatable lake by means of dam or gate at outlet cannot be acquired by prescription due to 12 V.S.A. § 462); Univ. of Vt. v. Reynolds' Ex'r, 3 Vt. 542, 556 (1831) (recognizing original version of 12 V.S.A. § 462 was designed to protect "lands granted . . . for public, pious or charitable uses" from adverse possession claims).

¶ 25.    Our longstanding understanding of § 462 is consistent with the language of the statute itself. The statute does not purport to apply to all claims relating to lands belonging to the state. On its face, § 462 provides that statutes of limitations shall not extend to "lands belonging to the state." This language is consistent with the view that § 462 is limited to prescriptive and possessory claims—claims in which ownership of the land itself, or associated property interests, is at issue.

¶ 26.    Moreover, sound policy considerations reinforce our longstanding interpretation. The time limits reflected in statutes of limitation "represent a balance, affording the opportunity to plaintiffs to develop and present a claim while protecting the legitimate interests of defendants in timely assertion of that claim." Inv. Props., Inc. v. Lyttle, 169 Vt. 487, 492, 739 A.2d 1222,

1226-27 (1999). If § 462 exempts from the statute of limitations <u>any</u> claims by the State relating to land, including tort claims and claims of environmental injury, then it also exempts such claims relating to land that is appropriated to a "public, pious or charitable use." Although the State suggests that the exemption may have different meanings when applied to state lands as opposed to lands held for public, pious, or charitable purposes, nothing in the language of the statute supports this approach. We should not lightly infer a never-before-recognized exception to the statute of limitations that would have such potentially widespread application.[6]

¶ 27. For the above reasons, we conclude the trial court properly interpreted § 462 as limited to claims of adverse possession (or other claims of property interests arising by prescription). The exemption is thus inapplicable in this case.

## II. 10 V.S.A. § 1390

¶ 28. 10 V.S.A. § 1390 codifies the Legislature's recognition that the groundwater of Vermont is a precious, finite, and invaluable resource, establishes a state policy that the state shall protect its groundwater resources to maintain high-quality drinking water, and establishes a policy that the state shall manage the groundwater resources of the state to minimize the risks of groundwater quality deterioration by regulating human activities that present risks to the

---

[6] We reject the State's countervailing policy argument that barring its claims would leave the State, after only six years, powerless to stop ongoing physical trespasses and other tortious invasions of its property interests. The order on appeal is the trial court's dismissal of the State's nonspecific, generalized claim of injury to Vermont groundwaters. In this decision, we do not purport to address the application of the discovery rule to specific sites of groundwater contamination. See, e.g., <u>State v. Carroll</u>, 2003 VT 57, ¶¶ 6-10, 175 Vt. 571, 830 A.2d 89 (mem.) (remanding for trial court determination of when State first expended money to clean petroleum spill as date of discovery for purposes of statute of limitations); <u>Univ. of Vt. v. W.R. Grace & Co.</u>, 152 Vt. 287, 289-91, 565 A.2d 1354, 1356-57 (1989) (holding, on basis of discovery rule, that property damage caused by asbestos contamination in 1971 to 1972 not barred by six-year statute of limitations). Nor do we address the argument raised below but not subject to this appeal that the continuing tort doctrine saves at least some of the State's claims from the six-year limitation. This decision leaves those issues, not before us in this appeal, for another day.

groundwaters. The following language of the statute is particularly germane to the State's argument here:

> it is the policy of the state that the groundwater resources of the state are held in trust for the public. The state shall manage its groundwater resources in accordance with the policy of this section, the requirements of subchapter 6 of this chapter, and section 1392 of this title for the benefit of citizens who hold and share rights in such waters. The designation of the groundwater resources of the state as a public trust resource shall not be construed to allow a new right of legal action by an individual other than the state of Vermont, except to remedy injury to a particularized interest related to water quantity protected under this subchapter.

10 V.S.A. § 1390(5) (emphasis added). The effective date of this statute was June 9, 2008. 2007 No. 199 (Adj. Sess.), §§ 1,8.

¶ 29. We reject the State's argument that this statute created a new cause of action retroactively enforceable by the State for six years following the statute's effective date without regard to the date of the underlying injury or discovery thereof. We do not decide whether § 1390 created a new cause of action in favor of the State, nor whether the claimed new statutory cause of action was enforceable retroactively to injuries preceding the effective date of the statute, because we conclude that even if § 1390 did create a new cause of action that was retroactively enforceable, that would not empower the State to apply the statute to injuries discovered more than six years prior to its complaint.[7]

¶ 30. The State's argument attempts to leverage the discovery rule far beyond its intended application. The State begins with the unremarkable observation that a cause of action accrues for limitations purposes only once the plaintiff "reasonably should discovery the injury,

---

[7] In responding to defendants' argument that the State cannot retroactively enforce any new cause of action created by § 1390, the State argues that the section did not change the legal effect of defendants' conduct, but merely provided an improved procedural framework for enforcing defendants' existing obligations. Our decision does not turn on resolution of the tension between the State's arguments in defense of retroactive application of § 1390 and in support of its claim that § 1390 creates a new and distinct cause of action.

its cause, and the existence of a cause of action." Because the State could not have brought a claim under § 1390 before June 9, 2008, the State argues that its § 1390 claims "accrued" for limitations purposes on that date. Accordingly, the State argues, for a period of six years beginning on June 9, 2008, the State could pursue any claims under § 1390 without regard to the date of a defendant's conduct, the injury to the state's groundwaters, or the State's discovery thereof.

¶ 31. The State's argument rests on the inaccurate assumption that the creation of a new statutory cause of action triggers the "accrual," for statute of limitations purposes, of any and all claims under that statute—even in the absence of any language in the statute indicating a legislative intent to allow retroactive application without any limitation as to the time the elements of the cause of action were known. The logical consequence of the State's position is that after the enactment of any statute or amendment creating a new cause of action, for a period of years defined by the applicable statute of limitations, the new statute has unlimited retroactive application to conduct and injuries that occurred, and were known, decades prior to its enactment. In this case, applying the State's approach, the State would be free to pursue a claim relating to the groundwaters of the state under § 1390 based on conduct and injuries discovered decades ago, without limitation.

¶ 32. The discovery rule provides that the limitations clock does not begin running until the plaintiff knows or should know of the injury and cause, and does not relate to the enactment of new statutory causes of action. We first adopted a general discovery rule in <u>Cavanaugh v. Abbott Laboratories</u>, 145 Vt. 516, 496 A.2d 154 (1985). At that time, we tied its contours to two statutes applying a discovery rule in specific settings, one of which provided that a cause of action accrues when the plaintiff "has knowledge or ought reasonably to have knowledge of having suffered the injury and of the cause thereof." <u>Id</u>. at 525, 496 A.2d at 160 (citing 12 V.S.A. § 518(a)). Subsequently, in <u>Lillicrap v. Martin</u>, this Court followed the clear national

13

trend in holding that the statute does not run until the plaintiff "has or should have discovered both the injury and the fact that it may have been caused by the defendant's negligence or other breach of duty." 156 Vt. 165, 175, 591 A.2d 41, 46 (1989). Reiterating this rule, we held that the statute of limitations begins to run "only when a plaintiff discovers or reasonably should discover the injury, its cause, and the existence of a cause of action." Id. at 176, 591 A.2d at 47 (quotation omitted) (emphasis added). The State seizes on this language, repeated in a subsequent case, to argue that under the discovery rule, in the case of a new cause of action, the claim accrues, and the statute of limitations begins to run, on the effective date of the statute. In context, however, it is clear that our reference in Lillicrap to "the existence of a cause of action" did not refer to the plaintiff's knowledge that defendant had a legal duty, but instead referenced the plaintiff's knowledge as to whether that the defendant was negligent and breached that duty.

¶ 33. We have never suggested that the discovery rule addresses the circumstance of a newly enacted statute, or that the creation of a new cause of action starts the clock anew, without regard to the date of the injury, or when the plaintiff knew of the injury and its cause. And the State cites no case in which a court has so held. In a decision only a month after Lillicrap, this Court reiterated that a cause of action accrues when the plaintiff knows of or reasonably should have discovered the injury and its cause. W.R. Grace & Co., 152 Vt. at 291-92, 565 A.2d at 1357. When the Legislature passes a new law creating a cause of action, a plaintiff does not "discover" the existence of previously unknown cause of action—no cause of action previously existed! The concept of a "discovery" rule has no place in the analysis.

¶ 34. When the State filed its complaint on June 5, 2014, the general six-year statute of limitations precluded claims arising from injuries that were discovered more than six years before. Even if § 1390 created a new cause of action for the State, and even if the statute authorized retroactive application of this new cause of action—questions we do not decide—the

14

six-year limitation would bar the State's § 1390 claims to the extent that it relies on generalized harm to the groundwaters of the state as a whole.[8]

¶ 35.    For the above reasons, we affirm the trial court's determinations that 12 V.S.A. § 462 does not exempt the State's claims from operation of the applicable statute of limitations, and its conclusion that the State's claims under 10 V.S.A. § 1390 are not all timely as a matter of law.

Affirmed.

FOR THE COURT:

_____

Associate Justice

---

[8]  On appeal, in arguing that the § 1390 claims are not time-barred, the State emphasizes the continuing nature of the MTBE contamination in Vermont.  We note again that this decision addresses only the issues referred for interlocutory review.  See supra, ¶ 26 n.6.