*State v. Atlantic Richfield Co.*, No. 340-6-14 Wncv (Teachout, J., Dec. 5, 2017).
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Washington Unit** | **Docket No. 340-6-14 Wncv** |

**STATE OF VERMONT,**
**Plaintiff**

**v.**

**ATLANTIC RICHFIELD COMPANY, et al.,**
**Defendants**

### DECISION
### Defendants' Motion to Dismiss Amended Complaint

This matter is before the court on a motion to dismiss filed on October 21, 2016 by defendants Exxon Mobil Corporation, ExxonMobil Oil Corporation, and Mobil Corporation ("Exxon"). The remaining co-defendants named in the State's complaint have joined in the motion.

### Background

The State filed its first Complaint on June 5, 2014, alleging a generalized injury to all State groundwaters caused by methyl tertiary butyl ether ("MTBE") contamination. The State alleged that all 29 Defendants participated in the promotion, marketing, distribution, and sale of gasoline containing MTBE in Vermont. Exxon, in turn, filed a motion to dismiss for failure to state a claim upon which relief can be granted, arguing that because the State knew of MTBE contamination in Vermont and its harmful environmental effects on State waters by 2007, the State's complaint was barred by the six-year statute of limitations under 12 V.S.A. § 511.

The court granted Exxon's motion to dismiss with respect to a claim for a generalized injury to the State groundwaters as a whole on the grounds that a claim framed in such a manner was time-barred. However, because the State had alleged discoveries within the preceding six years and could potentially identify claims that were not time-barred, the court could not conclude that there were no facts or circumstances under which the State would be entitled to relief. The court emphasized that the State's complaint did not sufficiently comply with the requirements of V.R.C.P. 9(f) with respect to specific site claims that were actionable because they were within the statute of limitations period.[1] The court granted the motion to dismiss the generalized claim, but gave the State an opportunity to file an amended complaint as to those claims that fell within the statute of limitations period. The Vermont Supreme Court affirmed this decision on May 27, 2016.

---

[1] The pertinent date for statute of limitations purposes is June 5, 2008, which is six years prior to the date this case was filed.

On September 7, 2016, the State filed the Amended Complaint now under consideration. In response, Defendants have again moved to dismiss, asserting that "[t]he only substantive changes in the Amended Complaint are the identification of various sites and wells throughout Vermont and an allegation that MTBE is or may be present at those sites and wells." Supporting Memorandum of Law at 4. Defendants contend that "[w]ith the exception of the five locations for which the State has made specific allegations of discovery within the limitations period, all of the State's claims are either untimely, alleged with insufficient specificity, or unripe." *Id*. Defendants ask the court to dismiss the State's claims on these grounds.

The State has attached to its Amended Complaint Appendices A-G, each one being a list representing a category of sites in which MBTE has at some point been detected or where the State believes it might be detected if testing were undertaken.[2] The total number of sites is over 3,000, although there is clearly some duplication, as the categories overlap. There is no question that the lists include sites for which action is barred by the statute of limitations. The State is openly seeking to advance its position that MTBE is pervasive throughout the State and that the court should adopt the continuing tort doctrine and find Defendants responsible for not only known sites but for testing and investigation at potential sites not currently identified. Defendants claim that, based on the prior ruling, it was incumbent on the State to limit the sites in its Amended Complaint to not only those sites where MTBE was first discovered within the limitations period but also, it argues, to identify the date of first discovery to provide assurance that only actionable claims are included.

## Standard of Review

The purpose of a Rule 12(b)(6) motion is to test the law of the claim, not the facts that might support it. *Kane v. Lamothe,* 2007 VT 91, ¶ 14, 182 Vt. 241. The court will only grant a motion to dismiss for failure to state a claim "when it is beyond doubt that there exist no facts or circumstances, consistent with the complaint that would entitle the plaintiff to relief." *Bock v. Gold*, 2008 VT 81, ¶ 4, 184 Vt. 575. In examining a Rule 12(b)(6) motion, the court assumes that all factual allegations in the complaint are true and must also "accept as true all reasonable inferences that may be derived from plaintiff's pleading." *Richards v. Town of Norwich,* 169 Vt. 44, 48–49 (1999).

"Since averments of time and place are material for testing the sufficiency of a complaint, defenses based on a failure to comply with the applicable statute of limitations are properly raised in a motion to dismiss." *Bethel v. Mount Anthony Union High Sch. Dist.*, 173 Vt. 633, 634 (2002). Thus, if, accepting as true all factual allegations in the complaint and all reasonable inferences

---

[2] The Appendices may be briefly identified as follows:

A: 58 sites owned by the State with MTBE
B: 30 sites where MTBE was first discovered after June 5, 2008
C: 550+/- sites in Vermont with known MTBE detection
D: 198 gas stations with MTBE possibly present, most of which have not been investigated
E: 59 salvage yards with MTBE possibly present, all untested
F: 665 public wells where MTBE has been detected since June 5, 2008
G: 1600 +/- public wells in the State, most of which are untested

drawn therefrom the complaint does not state a claim that accrued within the limitations period, the motion should be granted, and the complaint dismissed.

**Analysis**

The court finds it most useful to address the issue using the framework of the categories of sites identified in the State's Appendices in the Amended Complaint.

1. <u>Claims involving sites where MTBE was first detected on or after June 5, 2008 with specific dates of discovery included; Amended Complaint at ¶ 174.</u>

The State alleges that "MTBE was detected for the first time, and on information and belief, was not reasonably discoverable prior to then, in soil and/or groundwater at numerous sites sometime on or after June 5, 2008." Amended Complaint at 49, ¶ 174. Specifically, the State sets forth the following sites:

 a. Hinesburg Short Stop (aka Hinesburg Jolley Mobil), 21 Commerce Street, Hinesburg, Vermont, site code 20114243. MTBE was first detected at this site on July 20, 2012.

 b. North End Deli, 475 North Main Street, Barre, Vermont, site code 20124345. MTBE was first detected at this site on May 30, 2013.

 c. Citizen's Bank, 47 Merchants Row, Rutland, Vermont, site code 20124346. MTBE was first detected at this site on June 25, 2013.

 d. Burlington Free Press, 185-195 College Street, Burlington, Vermont, site code 20134393. MTBE was first detected at this site on September 16, 2013.

 e. Young Residence, 28 North Williams Street, Burlington, Vermont, site code 20134436. MTBE was first detected at this site on December 23, 2013.

*Id*. The allegations are clear that MTBE was detected at these five sites within the statutory period and Defendants do not challenge the timeliness of claims brought as to these sites. The State's claims as to these sites are not subject to dismissal.

2. <u>Claims involving sites where MTBE was first discovered or detected after June 5, 2008 with no specific dates of discovery included; Appendix B.</u>

The State lists 30 such sites in Appendix B. Defendants take issue with claims based on these sites on the grounds that the State failed to identify when the first discovery of MTBE occurred as to each site. "A pleading is sufficient under the rule if it gives 'fair notice of the claim and the grounds upon which it rests.'" *In re Waitsfield-Fayston Tel. Co., Inc.*, 2007 VT 55, ¶ 12, 182 Vt. 79, 83 (2007) *(citing Limoge v. People's Trust Co.,* 168 Vt. 265, 274 (1998) (quoting *Molleur v. Leriche,* 142 Vt. 620, 622 (1983)). It is "a bare bones statement that merely provides the defendant with notice of the claims against it. Its purpose is to initiate the cause of action, not prove the merits of the plaintiff's case." *Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 13, 184 Vt. 1, 11 (internal citation omitted).

3

With these standards in mind, the court concludes that the Amended Complaint, with respect to these sites, gives fair notice of the claims and the grounds upon which they rest. The State has alleged that the discoveries were after June 5, 2008 and therefore within the statute of limitations, and each site is specifically identified. While V.R.C.P. 9(f) provides that "averments of time and place are material and shall be considered like all other averments of material matter," it does not require the State to allege an exact date. In the prior dismissal of the first Complaint, the critical fact as to time was whether the discovery occurred before or after June 5, 2008. Here, the State has made specific representations as to that date in relation to the identified sites. Therefore, notwithstanding that exact dates have not been provided, the State's claims as to these sites are not dismissed.

3.  Claims involving sites with known MTBE detection; Appendix C

Appendix C lists approximately 550 sites throughout the State where it alleges there have been "known MTBE detections." While the 5 sites with specific post-June 5, 2008 discovery dates identified above in Section 1 are in this list, for the remaining sites the State does not allege that discovery of MTBE was after June 5, 2008.

The State argues, in part, that such claims are timely "where it first spent money to investigate, remove, or remediate MTBE in soil and/or groundwater" on or after June 5, 2008. In support of its position, the State cites *State v. Carroll*, 2003 VT 57, 175 Vt. 571. Defendants correctly observe that *Carroll* holds that an action under 10 V.S.A. § 6615 for *repayment* of funds spent by the State for investigation and remediation accrued when the State first expended funds. The claim in *Carroll* was based on a statute that authorized a cause of action for removal and remediation costs and for recovery of such costs. By contrast, the State has not brought a claim pursuant to that statute in this lawsuit, and the bases for liability under the statutes invoked by Plaintiff in this case are not comparable. As such, *Carroll* is inapplicable to these circumstances.

Secondly, the State asks the court to apply the continuing tort doctrine as to its nuisance and trespass claims to these sites on the grounds that contamination continues to exist. There are nine causes of action in the Complaint, only three of which are nuisance and trespass claims. Thus, as to the sites on this list, except for the undisputed 5, the non-nuisance and trespass causes of action, 1-2 and 6-9, which are based on statutes, negligence, and products liability must be dismissed.

With respect to the application of the continuing tort doctrine to the nuisance and trespass claims, the State urges the court to recognize it in this case. Defendants argue that the continuing tort doctrine "has not been and should not be adopted in Vermont, and would not save any of the State's untimely claims in any event," relying largely on *Gettis v. Green Mountain Econ. Dev. Corp.*, 2005 VT 117, 179 Vt. 117.

In the Decision on the first Motion to Dismiss, this court stated that "[e]ven assuming it applies, however, the question of under what circumstances the doctrine applies is one of fact and therefore its determination must await specific findings regarding what injuries the State suffered, when, and the nature of the State's claim." *State v. Atl. Richfield Co.*, No. 340-6-14 Wncv, 2015 WL 5176775 (Vt. Super. Ct. Jan. 15, 2015).

4

In its Opinion on interlocutory appeal of the Decision, the Vermont Supreme Court noted, in Footnote 6, "[n]or do we address the argument raised below but not subject to this appeal that the continuing tort doctrine saves at least some of the State's claims from the six-year limitation. This decision leaves those issues, not before us in this appeal, for another day."

The Vermont Supreme Court commented on the continuing tort doctrine in *Gettis* and explained as follows:

> The continuing tort doctrine allows a plaintiff to support his or her cause of action with events that occurred outside of the limitations period by delaying the accrual of a claim until "the date of the last injury or the date the tortious acts cease." *Feltmeier v. Feltmeier,* 207 Ill.2d 263, 278 Ill.Dec. 228, 798 N.E.2d 75, 85 (2003) . . . The continuing tort doctrine requires at least two elements: a continuing wrong, and some action contributing to the wrong that occurred within the limitations period.

2005 VT 117, ¶¶ 23, 25 179 Vt. 117, 126, 129. Under *Gettis*, "[t]he continuing tort doctrine requires that a tortious act—not simply the continuing ill effects of prior tortious acts—fall within the limitation period." 2005 VT 117, ¶ 28.

Defendants argue that the wrongful conduct alleged by Plaintiffs (i.e., blending MTBE into gasoline, supplying it to the State, and concealing its harmful nature) occurred more than six years prior to the commencement of this action. Thus, Defendants argue, the State has failed to allege "a continuing wrong" that occurred within the limitations period. The State, however, predicates its use of the continuing tort doctrine on the continuing *presence* of MTBE in the groundwater and at various sites throughout Vermont as a continuing trespass or nuisance.

*Gettis* does not address the continuing tort doctrine as applied to claims of nuisance or trespass involving environmental contamination. The Restatement (Second) of Torts provides, in part, that "[a] trespass may be committed by the *continued presence* on the land of a structure, chattel, or other thing which the actor has tortiously placed there, whether or not the actor has the ability to remove it." Restatement (Second) Torts § 161(1) (1965) (emphasis added). Under the Restatement, the actor's failure to remove the "other thing" which he or she tortiously placed on the land "constitutes a *continuing trespass* for the entire time during which the thing is wrongfully on the land." *Id*. at cmt. b (emphasis added). With certain exceptions not here alleged by the State, the failure to abate on the part of the actor "confers on the possessor of the land an option to maintain a *succession of actions* based on the theory of continuing trespass or to treat the continuance of the thing on the land as an aggravation of the original trespass." *Id*. (emphasis added)

Various states recognize the theories of "continuing trespass" and "continuing nuisance." See, e.g., *Christian v. Atl. Richfield Co.*, 2015 MT 255, ¶ 18, 380 Mont. 495, 505 (holding that evidence of continued migration was not required for application of continuing tort doctrine to nuisance and trespass claims); *Hoery v. U.S.*, 64 P.3d 214 (Colo. 2003) ("Colorado law recognizes the concepts of continuing trespass and nuisance for those property invasions where a defendant fails to stop or remove continuing, harmful physical conditions that are wrongfully placed on a

5

plaintiff's land."); *John Beaudette, Inc. v. Sentry Ins.*, 94 F. Supp. 2d 77, 107 (D.Mass. 1999) (summarizing the law of continuing wrong in Massachusetts as limited to actions in nuisance and trespass); *Jacques v. Pioneer Plastics, Inc.*, 676 A.2d 504, 506 (Me. 1996) (stating that Maine has long recognized claims for continuing trespass and continuing nuisance); *KFC Western, Inc. v. Meghrig*, (1994) 23 Cal.App.4th 1167, 1178-1181 (plaintiffs could state causes of action for both continuing nuisance and continuing trespass against former owners of property based upon soil contamination from underground storage tanks).

Application of the statute of limitations in continuing nuisance or continuing trespass cases tends to depend on whether an alleged nuisance or trespass is determined to be "permanent" or "temporary." See, e.g., *Rickel v. Komaromi*, 144 Conn. App. 775, 787, 73 A.3d 851, 860 (2013) ("The nature of a nuisance as permanent or temporary has an important bearing on the running of the statute of limitations[.]"); *Christian*, 2015 MT 255, ¶ 18, 380 Mont. 495, 505 ("The continuing tort doctrine requires us to consider whether a nuisance or trespass is temporary or permanent in character."). A permanent nuisance or trespass is found "where the situation has 'stabilized' and the permanent damage is 'reasonably certain.'" *Haugen Trust v. Warner*, 204 Mont. 508, 513, 665 P.2d 1132, 1135 (1983) (internal citation omitted). A temporary injury, in turn, "is one which may be abated or discontinued at any time," in other words, "[w]hen injury to property resulting from a trespass is remedial by restoration or repair." *Rickel*, 144 Conn. App. at 782 (internal citations omitted).

Determining whether an invasion is permanent or temporary "is partly a matter of fact and partly a matter of policy seemingly governed by a number of factors." 1 D. Dobbs, The Law of Torts § 57, at 117 (2001). The main factors include:

(1) the invasion can in fact be terminated or abated;[3]
(2) the cost of termination is not wasteful or oppressive;
(3) no privilege or public policy favors a continuation of the invasion;
(4) incentive to abate the invasion can be provided by permitting repeated suits for damages as they accrue; and
(5) the plaintiff prefers temporary damages;
(6) overall, it is not just to permit the defendant to acquire the permanent right to invade the plaintiff's interests in land by paying market price for that right against the plaintiff's wishes.

---

[3] Whether a nuisance or trespass is "abatable" appears to be the most significant question in determining whether an injury is temporary or continuous. See 14 A.L.R.7th Art. 8 (Originally published in 2016); see also *Nelson v. Skamania County*, 181 Wash. App. 1036, 2014 WL 2796031 (Div. 2 2014) (holding that because genuine issues of material fact remained as to whether a trespass was abatable, making it unclear when the statute of limitations accrued on the claim, summary judgment on this ground was inappropriate); *Burley v. Burlington N. & Santa Fe Ry. Co.*, 2012 MT 28, ¶ 74, 364 Mont. 77, 101, 273 P.3d 825, 839 (considering whether the degree of difficulty to abate a nuisance should determine whether to classify the nuisance as temporary or permanent); *Arcade Water Dist. v. U.S.*, 940 F.2d 1265, 1268 (9th Cir. 1991) (holding water contamination could ultimately abate and prove to have been temporary, thus related claim was sufficient to survive dismissal on limitations grounds).

*Id*. at 117-118. The distinction between temporary and permanent harm is significant in relation to the statute of limitations, as "[t]he continuing tort doctrine does not toll the statute of limitations in cases of permanent nuisance or trespass." *Christian*, 2015 MT 255, ¶ 18. In cases of temporary nuisance or trespass, however, their repetition or continuance "gives rise to a new cause of action . . . [t]hus, the injured party may maintain successive actions for damages incurred during the statutory period prior to the filing of each complaint." *Id.* at ¶ 19.[4]

One commentator acknowledges that "[h]ow statutes of limitations are applied to environmental contamination tort claims is a matter of significance for a number of reasons, including the difficulty of discovering the contamination, the great costs associated with environmental remediation, and the societal concern of abating pollution without inappropriately punishing industry." Christopher M. Rhymes, *Environmental Contamination As Continuing Trespass*, 42 Envtl. L. 1381, 1382 (2012).

This court should be reluctant to dismiss novel claims on a motion to dismiss, particularly if the doctrine relied upon for the claim is one that has been adopted and applied in other jurisdictions. However, the State seems to be seeking to extend the statute of limitations as to many sites, which is only appropriate if harm is deemed "temporary;" yet the State simultaneously argues that the harm is in the nature of "permanent," at least to some degree: "MTBE is persistent and does not biodegrade, ensuring that the toxic chemical will remain in the environment for decades without full remediation." Amended Complaint at ¶ 37. At this point, the allegations are somewhat confusing: the State alleges that MTBE does not biodegrade and alleges its presence in both water and soil without specifying which as to each site. It appears that there may be at least some sites in which the presence of MTBE in groundwater is remediable and therefore "temporary." The court cannot conclude that "it is beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief," *Bock*, 2008 VT 81, ¶ 4, as to the applicability of the continuing tort doctrine to environmental contamination.

Nonetheless, it is not reasonable to allow the possibility that the continuous tort doctrine might be adopted and applied in Vermont to completely eviscerate the statute of limitations as to hundreds or even thousands of sites on the chance that harm at some of the sites might be determined to involve "temporary" trespass or nuisance. The continuous tort doctrine involves application, not elimination, of the statute of limitation. It is not reasonable to conclude, when evaluating whether some version of the continuous tort doctrine may apply in a case involving environmental contamination, that therefore there is essentially no statute of limitations at all applicable to the numerous sites in the Amended Complaint simply because it is alleged that at some point in the past there has been, or at some point in the future there might be, MTBE present at a site.

Analysis for purposes of this motion is further informed by consideration of the overall procedural circumstances of the case. The State's allegations are that MTBE has been "detected"

---

[4] "In view of the uncertain and illogical nature of these distinctions, it has been suggested that in all cases the plaintiff be given the option of a single recovery for all damages, or successive actions, upon the condition that he is in no way responsible for the continuance of the trespass." Prosser and Keeton on the Law of Torts § 13, at 84 (5th ed. 1984).

"in soil and/or groundwater," but most of the sites are not owned by the State, and the State's claims in this case are predicted on harm to the State's *groundwater* as a public resource. If there is inert MTBE in soil that is not affecting groundwater, there may be an issue as to whether the State can prove a trespass or nuisance claim at all. In any event, to the extent the State is relying on harm to the State's groundwater, there would need to be, at a minimum, a showing of the presence of MTBE in groundwater within the limitations period as applied using the discovery rule.[5] Defendants do not dispute that the statute of limitations can be tolled by the discovery rule.

Thus, in order to show that claims are actionable, factual allegations of the presence of MTBE in groundwater and the date of initial discovery are important facts. The State argues that notice pleading does not require such facts to be included in a complaint, but this case is in its second round of evaluating the sufficiency of the complaint, and it is reasonable for the Defendants to have more specific information about whether, even with respect to a claim based on the continuing tort doctrine, there is a sufficient basis for claims related to 5 or 600 or 3,000 sites.

Often, "the burden of establishing a statute-of-limitations defense rests with the party pleading it." *Agency of Natural Resources v. Towns*, 173 Vt. 552, 553 (2001); see also *Pearce v. Manhattan Ensemble Theater, Inc.*, 528 F. Supp. 2d 175, 182 (S.D.N.Y. 2007) (finding a plaintiff not required to allege a specific date to survive a motion to dismiss, "because Defendants, not Plaintiff, bear the burden of proof on the affirmative defense of the statute of limitations"). The merit of a defendant's claim that an action is barred by the statute of limitations is a "question[] of fact which would have to be decided by the jury." *Monti v. Granite Sav. Bank & Trust Co.*, 133 Vt. 204 (1975) (citing *Estate of Delligan*, 111 Vt. 227, 237 (1940)). Because of this fact-intensive burden, the affirmative defense of statute of limitations is sometimes not resolvable in a 12(b)(6) motion. See *Allen v. Dairy Farmers of Am., Inc.*, 748 F. Supp. 2d 323, 353–54 (D. Vt. 2010) (citing *In re Evanston Northwestern Healthcare,* 2008 WL 2229488, *1 (N.D.Ill. May 29, 2008)).

However, in this case, the statute of limitations has already been fully litigated as to one cause of action and raised as a critical issue as to others. The facts related to the statute of limitations as to each site significantly affect the size and scope of the case. Judicial efficiency and efficiency as to the use of parties' resources supports addressing dispositive matters early in the case, and there is case law to support resolving statute of limitations issues early, depending on the nature of the claim. See cases cited on pages 4-5 of Defendants' Memorandum filed December 21, 2016. To come within the statute of limitations for purposes of the continuing tort doctrine as to the many sites listed in the Appendices, the State would need to prove that any harm to groundwater falls in the "temporary" rather than "permanent" category.

In this case, as to the approximately 545 sites that the State has listed in Appendix C, excluding the 5 unchallenged sites, it does not make sense for the obligation and expense of obtaining discovery on predicate facts of each site to be shifted to Defendants based on a broad-brush allegation of the State that the continuing tort doctrine might apply. Under these

---

[5] "[T]he statute of limitations begins to run 'only when a plaintiff discovers or reasonably should discover the injury, its cause, and the existence of a cause of action.'" *State v. Atl. Richfield Co.*, 2016 VT 61, ¶ 32, 148 A.3d 559, 567 (citing *Lillicrap v. Martin*, 156 Vt. 165, 175 (1989)).

circumstances the 'time and place' requirements of Rule 9 provide the basis for identifying actionable claims as distinguished from non-actionable claims in giving reasonable notice about the scope of the case. It is the State that is seeking to have the court apply a doctrine that has not previously been recognized as applicable in Vermont, and has certainly not been specifically defined by analysis in the context of specific facts. Moreover, the continuing tort doctrine does not purport to do away with the statute of limitations altogether, and may not even apply unless the harm is determined to be "temporary." It is the State with the information about when discovery of MTBE occurred at each site, whether and when it has affected groundwater, and whether remediation is possible.

This lawsuit is based on allegations of harm to the State's groundwater, both above and below ground. The State's description of the sites in Appendix C is as follows: "Appendix C provides a list of all sites in Vermont with known MTBE detections." Amended Complaint at ¶ 49. This is too broad an allegation to satisfy the application of the continuous tort doctrine. The doctrine may support recognition of some, but not necessarily all, of the sites identified. An allegation this broad does not sufficiently allege harm that is actionable under the standards of the doctrine currently applied in other jurisdictions. Therefore, the motion to dismiss is granted as to this broad-brush claim based on trespass and nuisance, counts 3-5. Nonetheless, the court will consider a motion to amend to add such claims for specifically identified sites if filed within the next 60 days, but as to each site there must be a specific allegation of detection of MTBE in groundwater (not just soil) since June 5, 2008 together with an identification of the initial date of detection. If the initial detection preceded June 5, 2008, there must be factual allegations that harm at the particular site is temporary and abatable.

This is not blanket permission for an amended complaint as was granted after the first motion to dismiss. Rather, this is an indication that the court will consider a motion to amend within the 60 days so that the State can identify more particularly the sites with facts to which the continuing tort doctrine might reasonably apply and include them in this case from the beginning so that discovery and pretrial processes can proceed in an organized and efficient manner. The Defendants will have the normal opportunity under the civil rules to object to such a motion if the pleadings as to specific sites are not sufficient as required by this paragraph.

This is not a ruling of law adopting the continuing tort doctrine or any particular version of the doctrine. It is a ruling on a motion to dismiss that is designed to enable a factual development that can be used as a basis for evaluating the applicability of the continuing tort doctrine.

4. Claims involving at least 198 gasoline stations with underground storage tanks ("USTs") at "high risk" for MTBE contamination; Appendix D.

The State alleges that at least 198 gasoline stations with underground storage tanks ("USTs") are at "high risk" for MTBE contamination. These sites are set forth in Appendix D. Defendants argue that these claims are not ripe for ajudication. In the alternative, Defendants assert that even if these claims were ripe for review, they would be barred by the statute of limitations because "if in fact it is more likely than not that some of the sites have MTBE contamination, then it stands to reason that the State was on inquiry notice of contamination prior

9

to June 5, 2008, and that any relevant conduct by Defendants occurred prior to the MTBE ban in 2007." Supporting Memorandum of Law at 14 n. 11.

"[T]he statute of limitations begins to run 'only when a plaintiff discovers or reasonably should discover the injury, its cause, and the existence of a cause of action.'" *State v. Atl. Richfield Co.*, 2016 VT 61, ¶ 32, 148 A.3d 559, 567 (citing *Lillicrap v. Martin*, 156 Vt. 165, 175 (1989)). In this case, the State alleges that MTBE contamination was not detected in groundwater at Cody Chevrolet, 364 River Street, Montpelier, Vermont, "until gasoline contamination was encountered during the removal of a UST and an oil-water separator in late 2011." Amended Complaint at ¶ 180. The State appears to contend that, on this basis, at least 198 other untested gasoline stations with USTs are at high risk for MTBE contamination. The motion to dismiss must be denied as to the State's claim with respect to Cody Chevrolet, 364 River Street, Montpelier, Vermont, as discovery of MTBE occurred there within the limitations period.

Apart from the Cody Chevrolet site, no injury related to the USTs has been "discovered" as to these sites. While the State appears to use Cody Chevrolet to illustrate the likelihood of MTBE contamination near gasoline stations with USTs, even that site apparently did not have detectable MTBE contamination in the surrounding groundwater prior to removal of the tank. The court finds the factual allegations related to Cody Chevrolet, assumed true for the purposes of this motion, to be an insufficient basis for a cause of action as to other gasoline stations with USTs. As Defendants point out, there is no "real, substantial controversy" at this time where the alleged injury of MTBE contamination is merely "hypothetical." See *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979) (internal citations omitted). Defendants' motion to dismiss as to the claims in Appendix D is granted, with the exception of the Cody Chevrolet site.

5. Claims involving 56 licensed untested salvage yards; Appendix E.

The State alleges claims involving 56 licensed salvage yards that, it contends, "more likely than not" are contaminated with MTBE. These have not been investigated by the State. The State alleges an increased risk for MTBE contamination because the yards historically stored automobiles and gasoline on site and Defendants failed to warn the operators of such yards about MTBE's special hazards. Amended Complaint at ¶ 181. The State's allegations as to these sites constitute a hypothesis based on logical reasoning, but at this time there are insufficient facts to show harm to the State's groundwater at these sites. The possibility that testing may reveal the presence of MTBE at some such sites is not a sufficient basis for liability, even if the continuing tort doctrine were applied. This is not the same as the sites in Appendix C, where MTBE has been detected at some point. While these sites are candidates for testing, the mere possibility of detection is not sufficient to meet the standard on a motion to dismiss. The State retains the opportunity to bring claims as to these sites if and when the discovery of MTBE occurs. At this point, the court cannot conclude that there are sufficient facts and circumstances as to each site for the claims to survive the Defendants' motion, and the claims must be dismissed.

6. Claims involving public wells where MTBE has been detected since June 5, 2008; Appendix F.

Appendix F includes 665 sites in which the State alleges that there has been some detection of MTBE since June 5, 2008. However, the complaint is general and somewhat confusing about the characteristics of the sites. See Amended Complaint at ¶¶ 182—83 . It is not clear whether detection first occurred prior to June 5, 2008 and whether the detection since June 5, 2008 has been in soil or in the groundwater itself, or whether the harm is alleged to be permanent or temporary. The analysis in section 3 above for the Appendix C sites applies similarly to these sites: a motion to amend may be filed that identifies as to each site claimed whether there has been detection since June 5, 2008 in groundwater (not just soil). It must also include the date of initial discovery and if before June 5, 2008, the factual basis on which the harm is alleged to be "temporary" as opposed to "permanent."

7. Claims involving all public wells within the State; Appendix G.

Appendix G is 68 pages long and lists approximately 1600 public wells. The State is clear that it is seeking the remedy of having the Defendants perform sampling on these wells. The State does not allege contamination in all these wells but wants the Defendants to undertake sampling to determine the extent of contamination. "While the State knows the physical addresses for all public drinking water wells, it is not possible to determine which specific wells have been contaminated without the comprehensive sampling program for all such wells sought as relief by the State here." Amended Complaint at ¶ 182A. It is also seeking as a remedy that Defendants undertake sampling on an even greater number of private drinking wells throughout the State. *Id.* at ¶ 182B. However, because there are no facts to suggest the presence of MTBE in these wells, there is no basis for liability at this point. It "is beyond doubt that there exist no facts or circumstances, consistent with the complaint that would entitle the plaintiff to relief." *Bock*, 2008 VT 81, ¶ 4, 184 Vt. 575. The allegation of the possibility of contamination is just too remote for liability to attach as to each of these sites. The court has already dismissed the State's claim for generalized injury to State waters as a whole. The fact that MTBE has been detected at some point in some wells is not a sufficient basis for liability as to these sites. If discovery occurs at some point as to specific wells, there may be a basis for a cause of action.

8. Claims involving state-owned sites "known to have been contaminated by MTBE;" Appendix A.

It is unclear from the Amended Complaint whether the State is currently asserting any claims as to these sites or what the facts are in relation to them or whether they also are included in other lists. Therefore, the motion to dismiss is granted as to these sites, but subject to the same terms of a possible motion to amend as identified for sites in Appendices C and F.

11

## Order

For the foregoing reasons, the motion to dismiss is *denied* as to the following claims:

1. Five claims in ¶ 174 of the Amended Complaint;

2. Claims for the 30 sites listed in Appendix B; and

3. The claim for the Cody Chevrolet site identified in Appendix D.

Otherwise, the motion is granted, but subject to the terms of a possible motion to amend as identified for sites listed in Appendices A, C, and F.

Dated at Montpelier, Vermont this _____ day of December 2017.

_____

Mary Miles Teachout
Superior Court Judge