*State v. Atlantic Richfield Co.*, No. 340-6-14 Wncv (Teachout, J., July 31, 2018).
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Washington Unit** | **Docket No. 340-6-14 Wncv** |

**STATE OF VERMONT,**
**Plaintiff**

**v.**

**ATLANTIC RICHFIELD COMPANY, et al.**
**Defendants.**

### DECISION
### Plaintiff's Motion to Amend First Amended Complaint
### (State's proposed revised Second Amended Complaint)

The first Complaint in this case was filed June 4, 2014.  On May 27, 2016, the Vermont Supreme Court affirmed this court's ruling granting Defendants' Motion to Dismiss but providing the State an opportunity to file an Amended Complaint.  An Amended Complaint was filed on September 17, 2016.  In December 2017, in response to Defendants' Motion to Dismiss Amended Complaint, the court dismissed many of the claims but stated it would consider another motion to amend to add specific allegations as to some of the dismissed claims if filed within 60 days. The State filed its Motion to Amend, together with its proposed second amended complaint, which is now before the court for consideration.[1]  Defendants argue that the State has not alleged required elements for some of its claims.  Based on the memoranda submitted and the arguments of counsel presented at the oral argument on May 21, 2018, the court grants the Motion to Amend in part and denies it in part as specified below.

#### Background

In its original Complaint, the State alleged a generalized injury to State waters as a whole caused by methyl tertiary butyl ether ("MTBE") contamination.  All 29 defendants, the State alleges, participated in the promotion, marketing, distribution, and sale of gasoline containing MTBE in Vermont.  Defendants argued that because the State knew of MTBE contamination in Vermont and its harmful environmental effects on State waters by 2007, the State's complaint was barred by the six-year statute of limitations in 12 V.S.A. § 511.  The court dismissed the original complaint on this basis, with permission to proceed as to contamination at sites not barred by the statute of limitations. This ruling was affirmed on appeal.  The relevant date was June 5, 2008, six years prior

---

[1] As originally filed, the proposed second amended complaint continued to include claims that had previously been dismissed.  At the request of the court at oral argument, Plaintiff filed, on June 1, 2018, a revised version that includes only those claims that survived the Motion to Dismiss Amended Complaint as well as the new amended claims that it seeks to pursue.  Both "clean" and redlined versions were filed on June 1, 2018.  This is the proposed second amended complaint at issue in this Decision.

to the filing of the case.  Claims that accrued after that date based on detection at specific sites were actionable and could be included in an amended complaint.

In the First Amended Complaint, the State alleged nine separate causes of action for groundwater contamination in relation to over 3,000 sites around the State.  For some, contamination was detected after June of 2008; for some contamination had been detected before June of 2008, but the State alleged ongoing contamination of groundwater; and for some, no contamination had been detected, but the State suspected the possibility of contamination and requested that they be tested at the expense of Defendants.  The court granted Defendants' Motion to Dismiss the trespass and nuisance claims as to sites where no contamination had been discovered as well as those where detection had occurred before June 5, 2008.  The court permitted the State to seek to pursue an amended complaint in relation to sites where the State claims that, although initial detection occurred prior to June 5, 2008, it believes that it could show that the claims fell within the statute of limitations period under the "continuing tort doctrine" because of further detection of contamination after that date.  While the doctrine has not yet been either adopted or rejected in Vermont, factual development would provide a context for evaluating its application in this case.

In the proposed second amended complaint now before the court, the State continues to assert nine separate causes of action, consisting of statutory, property, negligence, and products liability claims, in relation to over 400 sites.[2,3]  It acknowledges that MTBE was discovered at many of the relevant sites prior to June 5, 2008.  The State argues, however, that even though contamination was detected at such sites prior to that date, the court should adopt the continuing tort doctrine in connection with the trespass, private nuisance, and public nuisance claims on the grounds that the continued presence of MTBE constitutes ongoing torts such that claims are not barred by the statute of

---

[2] The nine causes of action are:

I.      Civil action for natural resources damages and restoration, 10 V.S.A. §1390
II.     Groundwater Protection Act, 10 V.S.A. §1410
III.    Public Nuisance
IV.     Private Nuisance
V.      Trespass
VI.     Negligence
VII.    Strict liability for design defect and/or defective product
VIII.   Strict liability for failure to warn
IX.     Civil conspiracy as to certain defendants

[3] The categories of sites included in the proposed second amended complaint are:

| | | |
|---|---|---|
| Appendix A: | State properties; 1 detection 10/21/13; 1 detection 2/27/98 | 2 |
| Appendix B: | Known sites with detection after 6/5/08 | 35 |
| Appendix C-1: | Detection in groundwater before and after 6/5/08 | 355 |
| Appendix C-2: | Detection in groundwater after 6/5/08 | 37 |
| Appendix F-1: | Public drinking wells; detection before and after 6/5/08 | 18 |
| Appendix F-2: | Public drinking wells; detection after 6/5/08 | 19 |

It appears there may be duplication between Appendices B and C-2.

limitations.  It provides factual allegations that MTBE contamination is temporary and abatable and thus the continuing tort doctrine would be applicable.

Defendants, in their opposition, shift their focus from seeking dismissal on statute of limitations grounds, which includes objecting to application of the continuing tort doctrine.  Instead, they raise legal arguments for dismissal not advanced in their previous Motion to Dismiss.  They argue a more fundamental objection than they previously did, namely that the State has not sufficiently alleged the basic elements necessary to allege trespass and nuisance causes of action.  Therefore, they argue there is no legal basis for the trespass and nuisance claims as to any sites.  Thus, they seek dismissal of all three causes of action in the proposed second amended complaint as to all sites, even though trespass and nuisance claims survived the prior Motion to Dismiss as to sites where detection occurred after June 5, 2008.

## Standard of Review

The motion before the court is to amend the complaint for a second time.  While the court had previously identified a relatively narrow scope for a possible second amendment, both parties have reframed the trespass and nuisance claims that Defendants previously moved to dismiss and some of which the court dismissed in the December 2017 ruling.  While amendments are generally liberally granted at the pleading stage,[4] this case has been pending for four years and the claims and allegations have been significantly refined during the consideration of two prior motions to dismiss.

Defendants oppose the amendment on futility grounds.  The standard for analyzing the futility argument is the same as the standard for a motion to dismiss under the V.R.C.P. 12(b)(6) standard.  *Colby v. Umbrella, Inc.,* 2008 VT 20, ¶ 5, 184 Vt. 1; *LeClair v. LeClair*, 2017 VT 34, ¶ 28 n. 10.

The State objects to Defendants' attempt to assert new arguments for dismissal of previously allowed claims, particularly as the court had limited the scope of the amendments the State was permitted to seek.  See *State v. Atlantic Richfield, Co.*, No. 340-6-14, slip op. at 9 (Vt. Super. Ct. Dec. 5, 2017) (Teachout, J.).  It is true that Defendants seek dismissal of claims of trespass and nuisance previously allowed.  However, this is a complex case involving several different  causes of action in relation to numerous possible sites with a variety of categories of characteristics.  As previously stated by this court, for maximum efficiency of the resources of all parties and the court, it makes sense to sort out the sustainability of legal causes of action to the extent possible in the early stages of the case to appropriately focus discovery and to avoid motions for summary judgment that would simply cause the parties to file memos duplicating arguments they have already made.  Therefore, the court will analyze the trespass and nuisance claims as they apply to all sites as set forth in the proposed second amended

---

[4] See V.R.C.P. 15(a) (leave to amend a complaint "shall be freely given when justice so requires.").

complaint, using the standard for a motion to dismiss. The parties have amply addressed the issues in their briefs, enabling the court to do so at this time.

Using the Rule 12(b)(6) standard, the purpose of the analysis is to test the law of the claim, not the facts that might support it. *Kane v. Lamothe,* 2007 VT 91, ¶ 14, 182 Vt. 241 (citation omitted). The court will only grant a motion to dismiss for failure to state a claim "when it is beyond doubt that there exist no facts or circumstances, consistent with the complaint that would entitle the plaintiff to relief." *Bock v. Gold*, 2008 VT 81, ¶ 4, 184 Vt. 575 (citation omitted).

In examining a Rule 12(b)(6) motion, the court assumes that all factual allegations in the complaint are true and must also "accept as true all reasonable inferences that may be derived from plaintiff's pleading." *Richards v. Town of Norwich,* 169 Vt. 44, 48–49 (1999). Thus, if, accepting as true all factual allegations in the complaint and all reasonable inferences drawn therefrom the complaint does not state a claim, the motion should be granted as to that claim and the claim dismissed.

Thus, the task for the court is to analyze whether the allegations with respect to all sites are sufficient to state claims of trespass, private nuisance, and public nuisance.[5]

## Analysis

The essence of Defendants' argument is that the facts alleged do not sufficiently meet the required elements of the trespass and nuisance causes of action.

---

[5] The several claims are asserted against the following categories of sites as follows:

I.       Civil action for natural resources damages and restoration, 10 V.S.A. § 1390
          A, B, C-2, F-2
II.      Groundwater Protection Act, 10 V.S.A. § 1410
          A, B, C-2, F-2
III.     Public Nuisance
          All sites
IV.     Private Nuisance
          All sites
V.       Trespass
          All sites
VI.     Negligence
          A, B, C-2, F-2
VII.    Strict liability for design defect and/or defective product
          A, B, C-2, F-2
VIII.   Strict liability for failure to warn
          A, B, C-2, F-2
IX.     Civil conspiracy as to certain defendants
          All sites

## I. Trespass

The cause of action of trespass focuses on invasion of an owner's exclusive possessory right. This is distinguished from nuisance, which focuses on interference with use, rather than possession, of property interests. "[T]respass is an invasion of the plaintiff's interest in the exclusive possession of his land, while nuisance in an interference with his use and enjoyment of it." *John Larkin, Inc. v. Marceau*, 2008 VT 61, ¶ 8, 184 Vt. 207 (quotation omitted). Therefore, "[l]iability for trespass arises when one intentionally enters or causes a thing to enter the land of another." *Canton v. Graniteville Fire Dist. No. 4*, 171 Vt. 551, 552 (2000). Courts have traditionally held that a defendant's act must cause an invasion of the plaintiff's property in some tangible matter, although personal entry is unnecessary. *Marceau*, 2008 VT 61, ¶ 9 (citations omitted).

Defendants have asserted that the State's trespass claim should fail for three reasons. Defendants argue first that the State cannot assert a trespass claim for properties that it does not own; second, that the State has not alleged that the Defendants were in control of the offending instrumentality at the time of the alleged invasion; and third, that the State has failed to allege requisite intent.

The State asserts that it may property maintain a trespass claim as the trustee of the groundwater of the State and in its capacity as *parens patriae*. Further, it argues that control of the instrumentality is not a required element of a trespass claim, and that the allegations satisfy the intent requirement.

### A. Whether the State can assert trespass claims for properties not within its exclusive possession

The State is the public trustee of the groundwater of the State. 10 V.S.A. § 1390(5). Vermont's groundwater is a "precious, finite, and invaluable resource" which the State "shall protect . . . to maintain high-quality drinking water." 10 V.S.A. § 1390(2)-(3).

The State asserts that a trustee can maintain a tort action at law with respect to trust property "as he could maintain by reason of his ownership of the property if he held it free of trust." Restatement (Second) of Trusts § 280 cmt. a (1959). Therefore, it asserts that the State may sue in this capacity to protect the State's groundwater.

The State argues it has general standing to sue in the context of its trusteeship over waters. See *State v. Hess Corp.*, 20 A.3d 212, 217 (N.H. 2011); *Maryland v. Amerada Hess Corp.*, 350 F. Supp. 1060, 1067 (D. Md. 172); *Attorney Gen. v. Hermes*, 339 N.W.2d 545, 550 (Mich. Ct. App. 1983); *State v. City of Bowling Green*, 313 N.E.2d 409, 411 (Ohio 1974). It maintains that a state may bring a trespass claim under a public trust theory. See *State e rel. Rice v. Stewart*, 184 So. 44 (Miss. 1938); *People v. Hyman*, 136 N.Y.S. 145 (N.Y. Sup. Ct. 1912).

Additionally, the State asserts it has standing to bring a trespass claim under the doctrine of *parens patriae*. The State asserts that the doctrine of *parens patriae* does not require state ownership of natural resources and may provide standing to a state to bring a suit to protect a broad range of resources. See *New Mexico v. Gen. Elec. Co.*, 467 F.3d 1223, 1243 n. 30 (10th Cir. 2006); *Hess Corp.*, 20 A.3d at 216. *Parens patriae* actions may be maintained by states to protect their "quasi-sovereign" interests that is "independent of and behind the titles of its citizens." *State of Maine v. M/V Tamano*, 357 F. Supp. 1097, 1100 (D. Me. 1973) (citing *Georgia v. Tennessee Copper Co.*, 206 U.S. 230, 237 (1907)).

There is an important distinction between substantive law and standing doctrines. In *New Mexico v. Gen. Elec. Co.*, the Court noted that *parens patriae* is a "standing concept rather than one of substantive recovery." It "found no judicial authority . . . which suggests the doctrine of *parens patriae* provides a state substantive rights beyond those provided by the public trust doctrine in a case involving the contamination of a publicly-held natural resource." 467 F.3d at n. 30. Therefore, if the State cannot sustain a claim because it cannot allege all the required elements of the claim, it cannot sustain the same claim under a *parens patriae* theory. The fact that the State may have standing to bring a claim concerning the State's groundwater does not eliminate the requirement to allege all elements of the cause of action at issue.

While the State is the trustee of groundwater and has the authority to manage and protect it, the State is not the exclusive owner of groundwater. 10 V.S.A. § 1390 is clear that citizens "share rights in such waters." 10 V.S.A. § 1390(4). The State cannot prevent a private owner from use of the groundwater on the owner's land, even though it may regulate and protect it. Because Vermont trespass law requires the exclusive possession of the property interest at issue, and the State does not have exclusive possession of groundwater, the State cannot pursue a trespass claim with respect to properties it does not own, even in its capacity as trustee. *New Mexico v. Gen. Elec. Co.*, 335 F. Supp. 2d 1185, 1234-35 (D.N.M. 2004). Neither 10 V.S.A. § 1390 nor the doctrine of *parens patriae,* while they may confer standing, broaden the State's substantive rights by eliminating the required element of exclusive possession. *New Mexico v. Gen. Elec. Co.*, 467 F.3d at n. 30.

The requirement of exclusive possession is met with respect to the two properties owned by the State listed in Appendix A, but not with sites owned by third parties. Therefore, the State cannot maintain a trespass claim with respect to all other sites not owned by the State. Because this element is met with respect to these two properties, the other elements must also be analyzed.

### B. Whether the defendants must be in control of the instrumentality at the time of the alleged invasion

Defendants' assert that they cannot be held liable for trespass because their conduct was limited to manufacturing, producing, and selling gasoline containing MTBE,

and they were not in control of the MTBE at the time it entered groundwater. See *City of Bloomington v. Westinghouse Elec. Corp.*, 891 F.2d 611, 615 (7th Cir. 1989) ("[C]ourts do not impose trespass liability on sellers for injuries caused by their product after it has left the ownership and possession of the sellers."); *In re Syngenta AG MIR 162 Corn Litig.*, 131 F. Supp. 3d 1177, 1210-11 (D. Kan. 2015) (noting a lack of cases "in which a trespass claim was allowed against a seller of a product on the basis that the seller knew that the product would end up interfering with property of non-purchasers if the seller did not cause the interference itself.").

The State asserts there is no such control requirement in Vermont. It argues that because Defendants knew that gasoline containing MTBE would be spilled or would leak into groundwater, and they knew of the dangers of MTBE, defendants can be held liable for trespass.

Defendants cite several cases in support of their argument that manufacturers or vendors of a product are not liable for trespass liability.

First, in *City of Bloomington*, the court dismissed a trespass claim against a defendant chemical manufacturer. 891 F.2d at 615. While noting that courts do not traditionally impose trespass liability on manufacturers for injuries caused by their product after it has left their control, the court concluded that the manufacturer neither deposited chemical waste on plaintiff's property nor did they "command, request, or coerce" the product's purchaser to do so. *Id*.

Similarly, in *Dine v. W. Exterminating Co.*, the court dismissed a trespass action against defendant chemical manufacturer and seller who "took no action, intentional or otherwise, that directly caused" an invasion. No. 86-1857-OG, 1988 WL 25511 at *9 (D.D.C. Mar. 9, 1988); see also *City of Manchester v. National Gypsum Co.*, 637 F. Supp. 646, 656 (D.R.I. 1986) (dismissing city's trespass claim against asbestos manufacturer and concluding their ownership and control of the product ceased at the time of sale, at which time plaintiff placed the products in public buildings); *Town of Hooksett Sch. Dist. v. W.R. Grace & Co.*, 617 F. Supp. 126, 133 (D.N.H. 1984) (dismissing plaintiff's trespass claim against asbestos manufacturer for the same reasons); *Parks Hiway Enters. v. CEM Leasing*, 995 P.2d 657, 664-65 (Alaska 2000) (dismissing trespass claim against defendant petroleum supplier regarding gasoline contamination that occurred after delivery, concluding that the supplier "merely performed a delivery function." The Court noted, however, that actors assume liability when they "set[] in motion a force which, *in the usual course of events*, will damage property of another." (emphasis in original; quotation omitted)).

Defendants also cite *In re Nassau Cnty. Consol. MTB Prods. Liab. Litig.*, in which a New York court dismissed trespass claims against defendant pipeline companies with respect to MTBE contamination. No. 601516/2009, 2010 WL 4400075 at *18 (N.Y. Sup. Ct. Nassau Cnty. Nov. 4, 2010). The court noted that these defendants are "only alleged [to have] committed a trespass by their participation in the chain of distribution of

MTBE-containing gasoline." *Id.* However, with respect to two other defendant petroleum companies, the plaintiffs had alleged that the companies "had good reason to know or expect that MTBE, due to its affinity to water and other characteristics, was likely to reach the plaintiffs' wells through foreseeable leaks or spills on soil." *Id.* Therefore, the Court denied the defendants motion to dismiss with respect to these defendants. *Id.*

Similarly, in *In re MTBE*, the Second Circuit, applying New York law, upheld a verdict finding defendant liable for trespass with respect to gasoline containing MTBE that it manufactured and supplied. 725 F.3d 65, 120 (2d Cir. 2013). Under New York law, trespassers must only "intend the act which amounts to or produces the unlawful invasion, and the intrusion must at least be the immediate or inevitable consequence of what he willfully does, or [what] he does so negligently as to amount to willfulness." *Phillips v. Sun Oil Co.*, 307, N.Y. 328, 331 (1954). Further, underground pollutants require a showing that the defendant "had good reason to know or expect that subterranean and other conditions were such that there would be passage [of the pollutant] from the defendant's to the plaintiff's land." *Id.*

In rejecting the defendant's argument that its actions "as a mere supplier" of gasoline containing MTBE were too remote to be the cause of the trespass, the court concluded that the jury found that the defendant knew the gasoline would be spilled or leak into groundwater. *In re MTBE*, 725 F.3d at 120 (citing *State v. Fermenta ASC Corp.*, 656 N.Y.S.2d 342, 346 (App. Div. 2d 1997) (concluding foreseeability is not a requirement for liability under the law of trespass, and "it is enough that the defendant's actions in directing consumers to apply [the chemical] to the soil was substantially certain to result in the entry" of chemicals into the plaintiff's property.") (citations omitted)). Therefore, the defendants were substantially certain that contamination would occur. *Id.*

Here, the State alleges that Defendants' conduct consisted of more than manufacturing and/or delivering gasoline containing MTBE. The State alleges Defendants knew or had reason to know that leaks and spillage of gasoline containing MTBE would occur and, because of the known characteristics of MTBE, groundwater would be contaminated. This is precisely the sort of allegation that New York courts in *In re MTBE* and *In re Nassau Cnty.* concluded were adequate to support liability under a trespass theory even in the absence of an allegation that the defendant chemical manufacturers controlled the instrumentality causing the trespass at the time of the alleged invasion.

Further, the remedy for trespass can be damages only, so the nature of the control necessary for proof of a claim of trespass need not include the ability to control withdrawal of the invasion.

With respect to the State-owned properties, the element of control is sufficiently alleged.

### C. *Whether the State has alleged the requisite intent for trespass*

"[L]iability for trespass arises when one intentionally enters or causes a thing to enter the land of another." *Canton*, 171 Vt. at 552 (citation omitted). Defendants assert that the State's allegation that they "knew with substantial certainty that MTBE would reach onto State property" and contaminate groundwater is insufficient to prove intent. Proposed Second Am. Compl., ¶ 245

"Intent is not . . . limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act and still goes ahead, he is treated by the law as if he had in fact desired to produce the result." Restatement (Second) of Torts § 8A; see also *id*. at § 158 cmt. i. Vermont Courts follow § 158 of the Restatement. *Marceau*, 2008 VT 61, ¶ 13 (noting that Vermont courts "have recently looked to the Restatement of Torts for guidance on the law of trespass" and noting that Restatement § 158 defines the liability for trespass.) (citations omitted).

The State alleges that Defendants knew or had reason to know that leaks and spillage of gasoline containing MTBE would occur and, because of the characteristics of MTBE, groundwater would be contaminated. Therefore, it has properly alleged the requisite intent for trespass.

### D. *Summary regarding Trespass*

With respect to the two State-owned properties in Appendix A, all essential elements of trespass have been alleged. Detection of contamination at one of them, the State Police Barracks in St. Albans, occurred initially in 1998, but the State also alleges detection in 2017. The court is not currently adopting the continuing tort doctrine with respect to this property. As previously stated, consideration of the doctrine is best done after development of the facts. Nonetheless, because of the possibility, the court cannot conclude that there are no facts or circumstances that would entitle the plaintiff to relief with respect to these properties. The trespass claim may go forward as to the properties in Appendix A.

None of the remaining properties (sites in Supplemental Appendices B, C-1, C-2, F-1, or F-2) are within the exclusive possession of the State. Therefore, the second amended complaint may not assert claims of trespass as to these properties.

## II.    Private Nuisance

As previously noted, nuisance law focuses on interference with an owner's use of property rather than exclusive possession. Both parties acknowledge that Vermont nuisance law follows the Restatement. *Marceau*, 2008 VT 61, ¶ 13; *Myrick v. Peck Elec. Co.*, 2017 VT 4, ¶ 4-5. The Restatement (Second) of Torts distinguishes between private nuisance and public nuisance causes of action. See §§ 821A, 821B, 821D (1979).

"A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Id*. at § 821D.

As stated by the Vermont Supreme Court, a private nuisance is "an interference with the use and enjoyment of another's property" that is both "unreasonable and substantial." *Coty v. Ramsey Assocs.*, 149 Vt. 451, 457 (1988); see also *Myrick*, 2017 VT 4, ¶ 4; *Marceau*, 2008 VT 61, ¶ 10 (requiring plaintiffs in a nuisance action to "demonstrate actual and substantial injury.") (citation omitted).

Comment c. of § 821D, the Private Nuisance section, provides as follows:

> *c. Private use and enjoyment.* Uses of land are either private or public. The uses that members of the public are privileged to make of public highways, parks, rivers and lakes, are "public" as distinguished from "private." By private use is meant a use of land that a person is privileged to make as an individual, and not as a member of the public. This and succeeding Sections do not deal with invasions of interests in public uses of land, and the phrase "use and enjoyment" is always used here in the sense of "private use and enjoyment." On public nuisance, see §§ 821B and 821C.

Thus, it appears that the most the State could allege would be private nuisance claims with respect to the two State-owned properties in Appendix A. As to State-owned lands, the claims of trespass and private nuisance are not necessarily mutually exclusive. *Id.* at § 821D cmt. d. Any other claims based on interference with use of groundwater as a public resource are claims related to public use, and the State does not "own" the groundwater but manages and protects it for the benefit of all citizens. 10 V.S.A. §1390(2). Therefore, the State, in its role as trustee and *parens patriae* on behalf of the public, cannot allege an interference with a private use of the groundwater with respect to these sites.

There is another characteristic of private nuisance claims that precludes the assertion of such claims by the State even in relation to its State-owned properties. The guidance and case law provided by the Restatement of Torts appears to confine private nuisance claims to instances in which one person's property use is interfering with another's property use. The allegations against Defendants in this case are based on their roles in manufacturing gasoline containing MTBE and introducing it into the stream of commerce rather than on any use made by Defendants of property owned by them.

"The law of private nuisance springs from the general principle that it is the duty of every person to make a reasonable use of his own property so as to occasion no unnecessary damage or annoyance to his neighbor." *Myrick*, 2017 VT 4, ¶ 4 (quoting *Pestey v. Cushman*, 259 Conn. 345, 352 (2002)).

The law of both public and private nuisance is "inextricably linked by their joint origin as a common law writ, dating to twelfth-century English common law." *Hagan v.*

*City of Barre*, No. 320-5-09 Wncv, 2009 WL 6551407, at *8 (Vt. Super. Ct. Jun. 29, 2009) (Toor, J.) (citing *Rhode Island v. Lead Industr. Ass'n.*, 951 A. 2d 428, 443 (R.I. 2008)). Private nuisance, however, "developed as a way to address 'invasions of the plaintiff's land due to conduct wholly on the land of the defendant.'" *Id.* (citing W. Keeton, et al., Prosser & Keeton on Torts § 86, at 617 (5th ed. 1984)).

"Nuisance claims resolve conflicts between neighboring, contemporaneous landowners." *Windsor School Dist. v. State*, No. 536-10-96 Wncv (Vt. Super. Ct. Feb. 15, 2002) (Bryan, J.) (citations omitted).[6] Vermont courts have additionally highlighted the importance of the defendant's use of their land when determining if a use is substantial or unreasonable. See *Trickett v. Ochs*, No. 467-11-00 Ancv, 2005 WL 5872192, at *5 (Vt. Super. Ct. Sept. 2, 2005) (Reiss, J.) (citing 2 D. Dobbs, The Law of Torts § 465, at 1327 (2001) ("The defendant's use of his land may . . . .").

There appear to be no private nuisance cases in Vermont that are grounded in a defendant's conduct unrelated to her or his use of land or capacity as a landowner. Further, the material in the Restatement of Torts is premised on the underlying principle that private nuisance claims are based on instances in which one person's property use is interfering with another's property use.

As stated above, the Restatement defines a private nuisance as "a nontrespassory invasion of another's interest in the private use and enjoyment of land." Restatement (Second) of Torts § 821D. To be held liable for either a public or private nuisance, there must be an act or "a failure to act under circumstances in which the actor is under a duty to take positive action." *Id.* at § 824.

In the context of an active defendant, "[o]ne is subject to liability for a nuisance caused by an activity." *Id.* at § 834. An activity is defined, in part, as "those that create physical conditions that are harmful to *neighboring land*." *Id.* at § 834 cmt. b (emphasis added).

Read together, the Restatement provisions appear to stand for the principle that liability for private nuisance is based in the use of land, whether as a landowner or an occupier of land. The Restatement additionally cites case law expressly noting that private nuisance claims are confined to instances where one person's property use interfered with another's use of neighboring or adjoining property. See *Mayor & Council*

---

[6] *Windsor School Dist.* was analyzed in *Sullivan v. Saint-Gobain Performance Plastics Corp..* No. 5:16-cv-125, 2017 WL 3726435, slip op at * 11 (D. Vt. May 1, 2017). The Sullivan Court concluded that the reference to "neighboring [and] contemporaneous landowners" reflected the horizontal (neighbor to neighbor), not vertical (predecessor owner to successor owner), nature of nuisance claims. *Id.* The decision did not, however, discuss the requirement that the parties be landowners or that the defendant's conduct to be related to their use of land. Nonetheless, it reflects the general proposition that nuisance causes of action arise from the effect of the use of a defendant's land on a plaintiff's land.

*v. Klockner & Klockner*, 811 F. Supp. 1039, 1057-58 (D.N.J. 1993) (citations omitted); *Amland Properties Corp. v. Aluminum Co. of Am.*, 711 F. Supp. 787, 807 (D.N.J. 1989) (citations omitted).

Therefore, while Vermont courts have not directly addressed the issue, because Vermont follows the Restatement, liability for a private nuisance appears to be confined to cases in which the defendant's *property* use causes an interference with a private plaintiff's property use.

Since the State has not alleged that Defendants' property use has interfered with the groundwater on any sites, including the two State-owned sites, the second amended complaint may not include claims of private nuisance against the Defendants as to any sites.

## III.     Public Nuisance

The State alleges a cause of action based on public nuisance as to all sites in the Appendices.

A public nuisance is an activity that represents "an unreasonable interference with a right common to the general public." *State v. Howe Cleaners, Inc.*, 2010 VT 70, ¶ 49, 188 Vt. 303 (citations omitted). There is no question that since 1985, the groundwater of the State is a public resource for the benefit of the general public.

The Restatement (Second) of Torts § 821B, entitled Public Nuisance, provides as follows:

> (1) A public nuisance is an unreasonable interference with a right common to the general public.
> (2) Circumstances that may sustain a holding that an interference with a public right is unreasonable include the following:
> > (a) Whether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or
> > (b) whether the conduct is proscribed by a statute, ordinance or administrative regulation, or
> > (c) whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right.

The Groundwater Protection Act of 1985 does not specifically preclude the assertion of a common law claim of public nuisance, as 10 V.S.A. § 1410(f) provides that the section authorizing a statutory cause of action shall not be "construed to preclude or supplant any other statutory or common-law remedies."

The parties dispute whether an element of a cause of action for public nuisance is that Defendants had control over the instrumentality that led to the interference with a right common to the general public. Defendants argue that they cannot be held liable for a public nuisance because they had no control over whether the product infiltrated the groundwater at any of the sites. The State argues that it is not required to allege or prove such control, and that product manufacturers can be liable for public nuisance depending on the instructions they provide for use and disposal of their product.

Decisions from courts that have addressed the issue in nuisance cases are mixed. In some cases, liability was found based solely on the creation or substantial participation in the creation of environmental contamination. See *In re MTBE*, 725 F.3d 65, 121-122 (2d Cir. 2013) (interpreting New York nuisance law). Alternatively, the Eighth Circuit, applying North Dakota law, concluded that because the defendant lacked control of the instrumentality after the sale of the property, a nuisance claim was not actionable. *Tioga Pub. Sch. Dist. No. 15 v. U.S. Gypsum Co.*, 984 F. 2d 915 (8th Cir. 1993). In 2015, the District Court Southern District of New York applied Pennsylvania law and determined that Pennsylvania had expressively declined to impose public nuisance liability in the context of injuries resulting from defective product design and distribution. *In re MTBE*, No. M21-88, 2015 WL 4092326, at *3 (S.D.N.Y., Jul. 2, 2015) (citing *City of Philadelphia v. Beretta, U.S.A. Corp.*, 126 F. Supp. 2d 882, 910 (E.D.Pa. 2000) *aff'd* 277 F.3d 419 (3d Cir. 2002); *Diess v. Pennsylvania Dep't of Trans.*, 935 A.2d 895, 904-05 (Pa.Commw.Ct. 2007)).

The State argues specifically that its allegations support public nuisance as well as products liability causes of action. Defendants argue that there is no reason to turn a products liability claim into a public nuisance claim and to do so would improperly broaden nuisance law.

If the court were to recognize what is essentially a products liability claim as a public nuisance claim, it would have two effects. First, it would duplicate claims that the State has already brought in statutory, negligence, and products liability causes of action while significantly enlarging the scope of public nuisance law in Vermont. Second, it could result in a substantial enlargement of the statute of limitations for parallel claims based on statute or sounding in negligence or products liability if the continuing tort doctrine were to be adopted. The use of nuisance doctrine plus the continuing tort doctrine would essentially extend the statute of limitations for parallel claims based on the same facts used to support a public nuisance claim.

It has been clear from the beginning of this case that a significant underlying issue is the effect of the statute of limitations on the breadth of the State's case. The State is seeking remedies for contamination of groundwater. Prior to 1985, groundwater was considered at common law to be privately owned by the owner of the land where it was located. In 1985, the Legislature enacted the Groundwater Protection Act, in which the common law doctrine of absolute ownership of groundwater was specifically abolished, 10 V.S.A. §1410(a)(5), and groundwater was declared as a public resource for the benefit of all Vermonters. 10 V.S.A. §1390(2).

Many governmental entities in other states pursued litigation against oil and gas manufacturers such as Defendants in the early 2000's. Both the source of MTBE and its contaminating effect on the State's groundwater were known by 2005, the year the Vermont Legislature banned the use of MTBE in Vermont, effective as of 2007. Therefore, the State was aware of MTBE contamination in groundwater well before June of 2008, the relevant date for the statute of limitations on these claims, yet it did not file this case, which includes claims for contamination detected prior to June of 2008, until more than 6 years later.

In doing so, it lost the ability to assert many claims that had accrued prior to June of 2008. It now seeks to use trespass and nuisance law as the basis for enlarging the statute of limitations, through the use of the continuing tort doctrine, to make actionable claims that were otherwise lost through failure to file within the time provided for by law.

Statutes of limitations serve an important purpose. The purpose of a statute of limitations is to afford "plaintiffs what the legislature deems a reasonable time to present their claims, . . . [and] protect defendants and the courts from having to deal with cases in which the search for the truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise." *Inv. Props. v. Lyttle*, 169 Vt. 487, 492 (1999) (citing *United States v. Kubrick*, 444 U.S. 111, 117 (1979)). The primary concern of the statute of limitations is fairness to the defendant, who "ought to be secure in [their] reasonable expectation that the slate has been wiped clean of ancient obligations" and should not be deprived of the ability to defend because evidence is no longer available. *Id.* (citation omitted). Overall, the limitations period "represent[s] a balance, affording the opportunity to plaintiffs to develop and present a claim while protecting the legitimate interests of defendants in timely assertion of that claim." *Id.*

The Restatement echoes this purpose. Restatement (Second) of Conflicts of Laws § 142 cmt. d (1971) (noting that the rationale behind a statute of limitations "is to protect both the parties and the local courts against the prosecution of stale claims.").

The limitations period applies to actions brought by the State in the same manner as it applies to actions brought by citizens. 12 V.S.A. § 461.

In general, any civil action, except for those "brought upon the judgment or decree of a court of record in the United States or of this or some other state, and except as otherwise provided," carries a six-year statute of limitations. 12 V.S.A. § 511.

This statute of limitations is applicable to the State's actions for restoration of damaged natural resources pursuant to 10 V.S.A. §§ 1390, 1410, public and private nuisance, trespass, negligence, products liability, and civil conspiracy.[7] The Vermont Supreme Court applied the six-year limitations period as set out in 12 V.S.A. § 511 to the

---

[7]A three-year statute of limitation applies when the negligence or products liability claim is related to a personal injury context, however. 12 V.S.A. § 512.

State's present claims relating to the lands belonging to the State. *State v. Atlantic Richfield Co.*, 2016 VT 61, ¶¶ 19-27, 34, 202 Vt. 212.

Enlargement of public nuisance law in the manner proposed by the State, together with the potential application of the continuing tort doctrine to permit the pursuit of statutory, negligence, and products liability claims that are otherwise stale, is not a necessary modification of common law in order to ensure the existence of a remedy that would otherwise not be available. Remedies for harm to groundwater caused by environmental contamination have been available for decades through common law causes of action brought forth in a timely manner.

As one court observed, to use common law nuisance as a framework for seeking a remedy for contamination from manufactured products is tantamount to nuisance law "becom[ing] a monster that would devour in one gulp the entire law of tort." *Tioga Pub. Sch. Dist.*, 984 F.2d at 921. It is not necessary to do so, as remedies are already available for products liability claims as well as the statutory and negligence claims. To the extent that the continuing tort doctrine were to be relied upon to extend the period for pursuing the claims in this case, it would eviscerate the policy underlying the statutes of limitations for the non-property claims based on the same facts as the property claims. The ability to bring a suit could continue during decades while no action is taken to address harmful effects of contamination. This would contravene the legislative intent of establishing statutes of limitations to ensure that claims are pursued in a timely manner. It is worth noting that six years is the same length of time determined by the Legislature for a statute of limitations applicable to environmental contamination cases under specific environmental legislation. See 12 V.S.A § 511; 10 V.S.A. § 8015 (permitting the Secretary of ANR to bring suit regarding compliance with environmental laws within 6 years).

This is a claim that Defendants manufactured and distributed a product that they had reason to know would cause harm to groundwater. Since 1985, the State has been the trustee of the State's groundwater under the Groundwater Protection Act. The State had knowledge of the effect of MTBE in the State's groundwater since well before 2008. To the extent that the State did not file suit within 6 years of initial detection of MTBE contamination at specific sites, it simply missed the statute of limitations deadline in relation to those individual sites. It does not make sense to enlarge the scope of public nuisance law generally to accommodate the filing of stale actions. The remedies were available. The State simply did not avail itself of the opportunity to bring timely actions. There is no need to expand the common law of public nuisance to make it possible to pursue such actions now.

The State alleges that there are sites within the State that are potentially contaminated but have not been tested. To the extent these sites are discovered to be contaminated in the future, claims may be pursued based on the application of the

discovery rule to the statute of limitations.[8] Causes of action and remedies exist under current law.

Moreover, there is a significant problem with respect to the remedy for public nuisance as a result of the State pursuing this case as the sole plaintiff. Pursuant to Restatement (Second) of Torts § 821C, if the State can make out a cause of action for public nuisance, it may be entitled to seek abatement, but it appears that it would not be entitled to a damages remedy, at least with respect to the properties it does not own (which is all but two properties). Restatement (Second) of Torts § 821C.

Regarding properties owned by third parties, it is difficult to conclude that the State would be entitled to a remedy of a court order that Defendants must undertake abatement that would necessarily require entry onto lands that are privately owned by third parties who are not parties to this case. It is clear from the State's proposed pleading that abatement would require invasion of private land at both contaminated groundwater sites and wells.[9] There is nothing in public nuisance law that would authorize the court to order invasion into lands of owners who were not parties to the case. Comments to the Restatement note that some private owners may be entitled to a remedy for public nuisance, but no private owners are plaintiffs in this suit.[10]

---

[8] "[T]he statute of limitations begins to run 'only when a plaintiff discovers or reasonably should discover the injury, its cause, and the existence of a cause of action.'" *State v. Atl. Richfield Co.*, 2016 VT 61, ¶ 32, 148 A.3d 559, 567 (citing *Lillicrap v. Martin*, 156 Vt. 165, 175 (1989)).

[9] The State has clarified that it seeks "remediation" with respect to MBTE in groundwater sites and "treatment" with respect to drinking water wells. The State has not alleged that these activities can be carried out without entry onto the lands of the private owners.

[10] Comments to § 821B discuss private enforcement of a public nuisance claim.

> *g. Interference with public right.* Conduct does not become a public nuisance merely because it interferes with the use and enjoyment of land by a large number of persons. There must be some interference with a public right. A public right is one common to all members of the general public. It is collective in nature and not like the individual right that everyone has not to be assaulted or defamed or defrauded or negligently injured. Thus, the pollution of a stream that merely deprives fifty or a hundred lower riparian owners of the use of the water for purposes connected with their land does not for that reason alone become a public nuisance. If, however, the pollution prevents the use of a public bathing beach or kills the fish in a navigable stream and so deprives all members of the community of the right to fish, it becomes a public nuisance.
> . . .
> It is not, however, necessary that the entire community be affected by a public nuisance, so long as the nuisance will interfere with those who come in contact with it in the exercise of a public right or it otherwise affects the interests of the community at large. . .
>
> *h. Relation to private nuisance.* Unlike a private nuisance, a public nuisance does not necessarily involve interference with use and enjoyment of land. A public nuisance as such does not afford a basis for recovery of damages in tort unless there is particular harm to the plaintiff, as stated in § 821C. When the particular harm consists of interference with the use and enjoyment of land, the public nuisance may also be a private nuisance. . . In this case the landowner may recover either on the basis of the particular harm to him resulting from the public nuisance or on the basis of the private nuisance

This is not a case in which a polluter was responsible for introduction of a harmful substance into a public pond or fishing access area, thus making the public water facility unsafe and unavailable for public swimming or fishing. In that case, the State could pursue a public nuisance claim seeking an abatement remedy to require the polluter to eliminate the public nuisance because the State could provide the access to the property that was necessary for abatement. The State cannot provide access for the abatement remedy it seeks to impose on the Defendants on the public nuisance claim in this case.

## Summary

The cause of action of trespass is permitted to be pursued with respect to both State-owned properties in Appendix A. Otherwise, the trespass, private nuisance, and public nuisance claims are now dismissed as to all other sites in the proposed second amended complaint.

## Order

1. For the foregoing reasons, the Motion to Amend is *granted* as to the addition of new content and the applicability of trespass claims related to the two State-owned properties in Appendix A, and otherwise *denied*.

2. The Decision of December 5, 2017 is modified; except for trespass claims related to the State-owned properties in Appendix A, all trespass, private nuisance, and public nuisance claims are dismissed.

3. Plaintiff's attorney shall prepare a Second Amended Complaint consistent with this ruling so that an updated accurate complaint can be used as the case progresses, and file it with the court no later than August 15, 2018.

4. Following the filing of the Defendants' Answers, the court will convene a scheduling conference for case management planning. The parties are encouraged to communicate with respect to proposed terms.

Dated at Montpelier, Vermont this 31st day of July 2018.

_____
Mary Miles Teachout
Superior Court Judge